## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHERYL A. PRIDGEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| NATIONSTAR MORTGAGE, LLC | § | |
| d/b/a MR. COOPER, | § | With Jury Demand Endorsed |
| | § | |
| Defendant. | | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Cheryl A. Pridgen ("Plaintiff"), by and through counsel, and for her Complaint against Defendant, Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Defendant" or "Nationstar") states as follows:

### I. INTRODUCTION

1.       Defendant, a mortgage servicer and debt collector, has engaged in willful, malicious, harassing, coercive, and deceptive actions against Plaintiff in furtherance of its efforts to illegally collect a debt she did not owe, after it had been discharged in bankruptcy as to her personal liability and she had permanently surrendered and vacated the collateral property. Specifically, Defendant: 1) sent Plaintiff at least twenty-six (26) harassing notices and letters and seven (7) billing statements on the discharged account to coerce payment from Plaintiff; 2) made collection calls to Plaintiff; and 3) made deceptive misrepresentations to Plaintiff to try to coerce payment of the discharged debt from her. At all relevant times, Defendant knew the subject debt

1

had been discharged as to Plaintiff's personal liability and that it was prohibited by law from collecting the debt from Plaintiff personally.

2.    Specifically, Plaintiff asserts claims against Defendant for violating: 1) the Texas Debt Collection Act the ("TDCA"), Tex. Fin. Code § 392.001 *et. seq.;*2) the Fair Debt Collection Practices Act (the "FDCPA"),15 U.S.C. §§ 1692 *et seq.*; 3) the common law tort of invasion of privacy; and 4) the discharge injunction of the United States Bankruptcy Court of Southern District of Texas. Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendant.

## II. PARTIES

3.    Plaintiff is a natural person residing in Nueces County, Texas and is a "consumer" as defined by the TDCA and FDCPA.

4.    Defendant Nationstar is a foreign limited liability company which may be served by delivering summons to its Legal Department at Nationstar Headquarters, 8950 Cypress Waters Blvd, Coppell, TX 75019.

5.    The debt at issue that Defendant was attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2) and 15 U.S.C. § 1692a.

6.    Defendant Nationstar is a "debt collector" as defined by Tex. Fin. Code § 392.001(6) and 15 U.S.C. § 1692a.

## III. JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.      Venue is proper in this district, because Defendant transacts business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. Factual Allegations

**A.      The Inclusion and Discharge of the Subject Debt in Plaintiff's Bankruptcy Case and the Surrender of the Collateral/Property.**

9.      On January 30, 2018, Plaintiff filed a Chapter 7 bankruptcy in case number 18-20036 ("Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division ("Bankruptcy Court").

10.      On Schedule D of his bankruptcy petition, "**Schedule D: Creditors Who Have Claims Secured by Property**" ("Schedule D"), Plaintiff listed 360 Mortgage Group as the creditor for a secured claim on a "Conventional Real Estate Mortgage" with the last 4 digits of the account number 7120, also known as Mr. Cooper Loan Number xxxxxx8682 (collectively the "Account" or "Loan") which was secured by a lien on real property located at 1606 Redbird Dr., Rockport, Texas 78382 (the "Property").

11.      A copy of Schedule D is attached hereto as Exhibit "A" and incorporated herein by reference.

12.      Prior to filing her Bankruptcy Case, Plaintiff had permanently vacated and surrendered the Property.

13.      In her bankruptcy petition, Plaintiff also included her "**Statement of Intention for Individuals Filing Under Chapter 7**" ("Statement of Intention") noting she intended to "Surrender the property."

14.     A copy of the Statement of Intention is attached hereto as Exhibit "B" and incorporated herein by reference.

15.     The Property was also listed in Plaintiff's bankruptcy petition in the schedule pertaining to Property, "**Schedule A/B: Property**" ("Schedule A/B"), where it was noted that Plaintiff was surrendering the Property and "[t]he property was substantially damaged in hurricane Harvey."

16.     A copy of Schedule A/B is attached hereto as Exhibit "C" and incorporated herein by reference.

17.     When Plaintiff filed her Bankruptcy Case, she was not residing in the Property.

18.     On or about January 31, 2018, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "**Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline**" ("341 Notice") to 360 Mortgage Group by first class mail. The 341 Notice warned all creditors, in conspicuous language, of the imposition of "an automatic stay against most collection activities… [to] try to collect from the debtors." The United States Postal Service did not return the 341 Notice sent to 360 Mortgage Group, creating a presumption it was received.

19.     On March 16, 2018, 360 Mortgage Group, LLC, filed a motion in the Bankruptcy Case seeking to lift the automatic stay on the Property ("Motion to Lift Stay") so it could foreclose or repossess the Property. (Doc. 13 filed in the Bankruptcy Case, Motion for Relief from the Stay Regarding Non-Exempt Property and Request for Variance).

20.     On April 9, 2018, the Bankruptcy Court granted the Motion to Lift Stay and signed an Agreed Order Terminating Automatic Stay on the Property.

21.     On May 21, 2018, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"). The Discharge Order followed Official Form 318, including the explanatory language contained therein. The Discharge Order discharged Plaintiff from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Creditors cannot collect discharged debts**," further explaining, in relevant part, that

> [t]his order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot… otherwise try to collect from the debtor personally on discharged debts. Creditors cannot contact the debtor by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

22.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "D" and incorporated herein by reference.

23.     On May 21, 2018, the Bankruptcy Noticing Center sent a copy of the Discharge Order to 360 Mortgage Group, LLC by electronic transmission. This mailing constituted notice of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. § 524(a).

24.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedules "A/B" and "D" to Plaintiff's Petition.

25.     At no time did Plaintiff reaffirm the debt on the Account with any person or entity.

26.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B.     After the Debt was Discharged in Plaintiff's Bankruptcy Case, Defendant Acquired the Servicing Rights on the Accounts and Attempted to Collect the Subject Discharged Debt from Plaintiff *in Personam*.**

27.     Post-discharge, Defendant, a company that was unknown to Plaintiff and with which Plaintiff had no business relationship, acquired the servicing rights on the discharged debt and Account; Defendant engaged in this illegal, post-discharge debt collection activity against Plaintiff by:

> (1)     sending Plaintiff mortgage statements on the Account demanding payment;
>
> (2)     sending Plaintiff a series of offensive communications, notices and letters requesting she take actions to coerce payment from her; and
>
> (3)     making collection calls to Plaintiff.

Further detail about Defendant's collection actions at issue are below.

**1)     Collection Statements and Correspondence Defendant Sent to Plaintiff Post-Discharge**

28.     On or about July 9, 2018, Defendant sent Plaintiff a notice entitled, **"WHAT DOES MR. COOPER DO WITH YOUR PERSONAL INFORMATION,"** informing Plaintiff that Defendant collects her personal information from credit bureaus, affiliates or other companies, which can include: her Social Security number, Account balances and payment history, Transaction History, Income and Credit history and credit scores. The notice further informs Plaintiff that some reasons Defendant can share her personal information with its affiliates or nonaffiliates is for: processing transactions, maintaining her account, reporting to

6

credit bureaus or for marketing. The notice also informs Plaintiff, "[w]hen you are no longer our customer, we continue to share your information as described in this notice."

29.    A redacted copy of the 7/9/2018 Notice is attached hereto as Exhibit "E" and incorporated herein by reference.

30.    On or about July 10, 2018, Defendant sent Plaintiff a letter ("7/10/2018 Wind Insurance Letter") with the purported **"SUBJECT:** *Please provide property insurance information*." The letter states: "Our records show that your wind insurance expired, and we do not have evidence that you have obtained new coverage. **Because wind insurance is required on your property, we plan to buy insurance for your property.** You must reimburse us for any period during which the insurance we buy is in effect but you do not have insurance." The letter further instructs Plaintiff to, "immediately provide us with your insurance information," which "must be provided in writing." It also advises Plaintiff, "[t]he insurance we buy: **Will cost an estimated $1,244.00 annually, which may be significantly more expensive than insurance you can buy yourself. May not provide as much coverage as an insurance policy you buy yourself**," and "**[p]lease be advised that your monthly mortgage payments will be increased to include the cost of this policy**."

31.    A redacted copy of the 7/10/2018 Wind Insurance Letter is attached hereto as Exhibit "F" and incorporated herein by reference.

32.    On or about July 11, 2018, Defendant sent Plaintiff a notice, entitled "**NOTICE OF SERVICING TRANSFER**" ("7/11/2018 Servicing Transfer Notice") informing Plaintiff that effective 07/02/2018, the servicing of the Loan was transferred to Defendant, and that 360 Mortgage Group will stop accepting payments received after 07/02/2018 and Defendant will

collect payments going forward. The notice instructs Plaintiff to: "**[s]end all payments due on or after 07/02/2018 to Mr. Cooper at this address:** PO Box 650783 Dallas, TX 75265-0783". The back of the notice includes detained information on how make monthly mortgage payments.

33.    A redacted copy of the 7/11/2018 Servicing Transfer Notice is attached hereto as Exhibit "G" and incorporated herein by reference.

34.    On or about July 16, 2018, Defendant sent Plaintiff a letter advising Plaintiff of her "unapplied funds account", stating, "Your current balance of unapplied funds is $549.83. To expedite the processing of these funds, please remit the remaining amount due in order to complete a full payment owed." The letter further informs Plaintiff, "As of the date of this letter, the total amount required to bring this account current is $6,379.19." and advised Plaintiff to contact Defendant for an "up-to-date account information and amounts owed."

35.    A redacted copy of the 7/16/2018 letter is attached hereto as Exhibit "H" and incorporated herein by reference.

36.    On or about July 17, 2018, Defendant sent Plaintiff four (4) identical notices with different tracking numbers, on the Account stating in the first sentence, **"YOU ARE IN DEFAULT UNDER THE TERMS OF YOUR NOTE AND MORTGAGE/DEED OF TRUST."** ("7/16/2018 Notice of Default") The notice states: "Your loan is currently past due for the **12/01/2017** payment and is due for all payments from and including that date". It also warns Plaintiff, "[t]he failure to make these payments is a default under the terms and conditions of the mortgage loan." The notice further demands Plaintiff to pay Defendant on the Account, stating, "[t]his is a demand for a payment of **$6,379.19**, which is the total amount due and owing as of the date of this letter, including all late payments, any late charges, periodic adjustments to the

payment amount (if applicable), attorney fees and expenses of collection." The notice also states: "Unless we receive full payment of all past-due amounts by the date above, we will accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. This could result in the loss of your property.

37.    Redacted copies the four (4) identical 7/16/2018 Notices of Default are attached hereto as Exhibits "I" through "L," respectively, and incorporated herein by reference.

38.    On or about July 17, 2018, Defendant sent Plaintiff a letter ("7/17/2018 Hazard Insurance Letter") with the purported **"SUBJECT:** *Please provide property insurance information*." The letter states: "Our records show that your hazard insurance expired, and we do not have evidence that you have obtained new coverage. **Because hazard insurance is required on your property, we plan to buy insurance for your property.** You must reimburse us for any period during which the insurance we buy is in effect but you do not have insurance." The letter further instructs Plaintiff to, "immediately provide us with your insurance information," which "must be provided in writing." It also advises Plaintiff, "[t]he insurance we buy: **May be significantly more expensive than insurance you can buy yourself**," and "**May not provide as much coverage as an insurance policy you buy yourself**." It also states, "**[p]lease be advised that your monthly mortgage payments will be increased to include the cost of this policy**."

39.    A redacted copy of the 7/17/2018 Hazard Insurance Letter is attached hereto as Exhibit "M" and incorporated herein by reference.

40.     On or about July 17, 2018, Defendant sent Plaintiff a periodic statement regarding the Account ("7/17/2018 Statement"), stating "**Total Amount Due: $5,862.82**" and the "Payment Due Date: 08/01/2018." The "Explanation of Amount Payable" section states, "**Total Amount Due $5,862.82,**" comprised of "Overdue Payment(s) $5,623.92," the "Regular Monthly Payment $702.99," "Partial Payment (Unapplied)," and "Total Fees and Charges $85.74." The statement also includes an "Important Messages" section, which notifies Plaintiff, "***your escrow account has a negative balance. This shortage in your escrow account may result in an increase in your monthly escrow payment. We recommend you make additional payments to your escrow to eliminate or reduce the shortage.***" The detachable, self-addressed payment coupon states: "DETACH HERE AND RETURN WITH YOUR PAYMENT" and on the top of the coupon it states, "**VOLUNTARY PAYMENT COUPON**" and "**TOTAL AMOUNT DUE 08/01/2018 $5,862.82**." It also instructs Plaintiff to "WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO MR. COOPER." On the back of the statement it warns Plaintiff about "**LATE CHARGES AND OVERDRAFT FEES,**" and warns Plaintiff that "Mr. Cooper may report your account to the major credit bureaus," and "[l]ate or missed payments and other defaults on your account may reflect on your credit report with can impact your ability to obtain other forms of credit." It also includes detailed sections on "**IMPORTANT PAYMENT INFORMATION,**" informing Plaintiff '[i]t is important to use the remittance stub and envelope provided…and that "should you not receive your statement, DO NOT DELAY PAYMENT," and the "**PAYMENT OPTIONS**" section includes details of various methods for Plaintiff to make payment to Defendant.

41.     A redacted copy of the 07/17/2018 Statement is attached hereto as Exhibit " N" and incorporated herein by reference.

42.     In addition to the 07/17/2018 Statement described above, Defendant sent Plaintiff a series of at least seven (7) additional periodic statements seeking payment on the discharged Account on or about the following dates: 08/20/2018, 09/18/2018, 10/18/2018, 11/20/2018, 12/18/2018, 01/18/2019 and 02/19/2019 which, for all practical purposes, differed only as to dates and amounts demanded. Several of the Statements include an amount for various post-discharge fees charged to the amounts listed as "due" on the Account.

43.     Redacted copies of the seven (7) Monthly Statement, dated 08/20/2018, 09/18/2018, 10/18/2018, 11/20/2018, 12/18/2018, 01/18/2019 and 02/19/2019, are attached hereto as Exhibits "O" through "U" and incorporated herein by reference.

44.     On or about July 22, 2018 and January 17, 2019, Defendant sent Plaintiff a letter informing her that if she was having trouble making her mortgage payments, she may be eligible for many loss mitigation options and to call Defendant to learn more and for instructions on how to apply for assistance. The letter lists "**Available Loss Mitigation Options**," including: "**Refinance the loan with us or another lender;**" "**Modify the loan terms with us;**" " **A voluntary payment forbearance temporarily gives you more time to pay your voluntary monthly payment;**" "**A voluntary repayment plan that allows missed voluntary payment to be made up over time; or**" "**If you are not able to continue voluntarily paying your mortgage, your best option may be to find more affordable housing. You may be able to either surrender your home through a Deed in Lieu or sell your home and use the proceeds to pay off the loan, even if the proceeds are not enough to pay the loan in full (short sale).**"

The letter also informs Plaintiff the name of her "Dedicated Loan Specialist" and requests she call him with questions at the provided toll-free phone number by email.

45.    A redacted copy of the 07/22/2019 and 01/17/2019 letters are attached hereto as Exhibits "V" and "W," respectively, and incorporated herein by reference.

46.    On or about July 23, 2018, Defendant's representative Brian Hahn sent Plaintiff a letter stating: "My name is Brian Hahn and as of 07/23/2018, I am your **new** Dedicated Loan Specialist." ("07/23/2018 Single Point of Contact"). The letter states that Plaintiff needs to know that, "[a]s you know, my role is to serve as your single point of contact (SPOC) and help you with any issues you may have making your mortgage payment" and "[t]o keep your account up to date, it would be very helpful if we could talk and explore your options," requesting Plaintiff to "[p]lease reach out to me as soon as it is convenient to you."

47.    A redacted copy of the 07/23/2019 Single Point of Contact letter is attached hereto as Exhibit "X" and incorporated herein by reference.

48.    On or about August 9, 2018, Defendant sent Plaintiff a notice regarding, "**SUBJECT: *Second and Final Notice – Please provide property insurance information***" stating, "**[b]ecause wind insurance is required on your property, we plan to buy insurance for your property**" and "**[y]ou must reimburse Mr. Cooper for insurance premiums for any** period during which the insurance we buy is in effect but you do not have insurance" and notes the insurance Defendant buys "**[w]ill cost an estimated $1,244.00 annually, which may be significantly more expensive than insurance you can buy yourself**." The notice instructs Plaintiff to "immediately provide us with your insurance information" and if not,  The notice also states if Defendant does not receive proof of coverage from Plaintiff, the premium for the

policy shown on the enclosed letter, which is shown to be $1,244.00, **"As a result, your monthly mortgage payments will be increased to include the cost of this policy."**

49.    A redacted copy of the 08/09/18 Insurance Notice is attached hereto as Exhibit "Y" and incorporated herein by reference.

50.    On or about August 16, 2018, Defendant sent Plaintiff a notice with the "**SUBJECT:** *Second and Final Notice – Please provide property insurance information*." The notice sates "**[b]ecause hazard insurance is required on your property, we plan to buy insurance for your property**." It also informs Plaintiff, "[y]ou must reimburse Mr. Cooper for insurance premiums for any period during which the insurance we buy is in effect but you do not have insurance," which "[**w]ill cost an estimated $1,868.00 annually, which may be significantly more expensive than insurance you can buy yourself**" and "[y]ou should immediately provide us with your insurance information." The notice also states if Defendant purchases this insurance, "[**p]lease be advised that your monthly mortgage payments will be increased to include the cost of this policy.**"

51.    A redacted copy of the 08/16/18 Insurance Notice is attached hereto as Exhibit "Z" and incorporated herein by reference.

52.    On or about August 17, 2018, and November 20, 2018, Defendant sent Plaintiff a Servicemembers Civil Relief Act Notice Disclosure, informing Plaintiff about certain legal protections and debt relief for service members or their spouses or dependents.

53.    A redacted copies of the 08/17/18 and 11/20/18 SCRA Notice are attached hereto as Exhibits "AA" and "AB," respectively, and incorporated herein by reference.

13

54.     On or about September 7, 2018 and September 10, 2018, Defendant sent Plaintiff letters regarding hazard insurance, "**SUBJECT:** *Please provide property insurance information*," informing Plaintiff Defendant was going to buy insurance for the Property, and Plaintiff was going to have to reimburse it for any period during which the insurance it buys is in effect but Plaintiff does not have insurance and instructing Plaintiff to immediately provide Defendant with insurance information. The notice also states that if Defendant does purchase this insurance, "**[p]lease be advised that your monthly mortgage payments will be increased to include the cost of this policy**." The last sentence in the letter states, "**WE HOPE YOU'LL AGREE THAT OBTAINING YOUR OWN INSURANCE IS IN YOUR BEST INTEREST**."

55.     Redacted copies of the 09/07/18 and 09/10/18 hazard insurance letters are attached hereto as Exhibits "AC" and "AD," respectively, and incorporated herein by reference.

56.     On or about September 12, 2018, Defendant sent Plaintiff a statement, an "ESCROW REVIEW STATEMENT," informing Plaintiff "YOU HAVE A SHORTAGE IN THE AMOUNT OF $3,760.43," and that her "**NEW MORTGAGE PAYMENT STARTING DECEMBER 1, 2017**," would be "**$1,157.12** IF SHORTAGE AMOUNT IS ADDED OVER 12 MONTHS," and "**$843.75** IF YOU PAY SHORTAGE IN FULL." The statement includes a detachable payment coupon stating, "YOU CAN PAY ONLINE OR DETACH HERE AND RETURN WITH YOUR PAYMENT." The coupon also states, I have enclosed a check for: "Escrow Shortage Payment Options," including "**Option 1: $3,760.43**, the total shortage amount. I understand that if this is received by 12/01/2017, my monthly mortgage payment will be $843.75, starting 12/01/2017," and "**Option 2: _____,** part of the shortage." Also, the

coupon states, "WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO MR. COOPER." The back of the Statement notes, "AMOUNT NEEDED TO BRING ACCOUNT CURRENT: $3,760.43." It also states, "**HERE'S WHAT YOU CAN DO ABOUT YOUR SHORTAGE:** PAY SHORTAGE OVER 12 MONTHS MAKE YOUR NEW MONTHLY PAYMENT OF **$1,157.12** WHICH INCLUDES THE PAYMENT OF THE ESCROW SHORTAGE OVER 12 MONTHS," and "PAY SHORTAGE IN FULL NOW, PAYING THE SHORTAGE AMOUNT OF $3,760.43 IN FULL BY **12/01/2017** WILL REDUCE YOUR NEW MONTHLY PAYMENT TO $843.75." Further, it states "[m]**ake your shortage payment online by visiting ww.mrcooper.com or by mailing the coupon on the first page with your payment**."

57.    A redacted copy of the 09/12/18 Escrow Statement is attached hereto as Exhibit "AE" and incorporated herein by reference.

58.    On or about October 10, 2018, Defendant sent Plaintiff a notice regarding, "**SUBJECT:** *Second and Final Notice – Please provide property insurance information*" stating, "[b]**ecause wind insurance is required on your property, we plan to buy insurance for your property**" and "[y]ou must reimburse Mr. Cooper for insurance premiums for any period during which the insurance we buy is in effect but you do not have insurance" and notes the insurance Defendant buys "[w]**ill cost an estimated $1,878.00 annually, which may be significantly more expensive than insurance you can buy yourself**." The notice instructs Plaintiff to "immediately provide us with your insurance information" and if not,  The notice also states if Defendant does not receive proof of coverage from Plaintiff, the premium for the

policy shown on the enclosed letter, which is shown to be $1,244.00, **"As a result, your monthly mortgage payments will be increased to include the cost of this policy."**

59.    A redacted copy of the 10/10/18 Insurance Notice is attached hereto as Exhibit "AF" and incorporated herein by reference.

60.    On or about December 12, 2018, Defendant sent Plaintiff a statement, an "ESCROW REVIEW STATEMENT," informing Plaintiff her "**NEW MORTGAGE PAYMENT STARTING DECEMBER 1, 2018**," would be "**$728.04**" and her "**TOTAL MONTHLY MORTGAGE PAYMENT AMOUNT**" was a "**CURRENT PAYMENT $1,157.12**." It also states, "**NEW TOTAL MONTHLY ESCROW AMOUNT $156.50**." Further, it states "[**m**]**ake your shortage payment online by visiting ww.mrcooper.com or by mailing the coupon on the first page with your payment**."

61.    A redacted copy of the 09/12/18 Escrow Statement is attached hereto as Exhibit "AG" and incorporated herein by reference.

62.    On or about January 2, 2019, Defendant sent Plaintiff a letter titled, "Reminder of Lender-Placed Insurance." The letter informs him that "[i]n the mortgage documents you signed, you agreed to keep insurance on your structure/improvements at all times, in the form and amounts we require" and "[f]ailure to do so is a breach of those requirements." It requests he "[p]lease contact your insurance agent or company and purchase coverage," followed by instructions on how Plaintiff can send proof of the requested insurance coverage to Defendant. Further, it informs her that if Defendant does not receive proof of coverage, "the current Lender Placed Policy on your loan will be renewed on 07/06/2019" and "[t]his premium will be charged to your escrow account."

63.    A redacted copy of the 01/02/19 letter Defendant sent to Plaintiff is attached hereto as Exhibit "AH" and incorporated herein by reference.

64.    On or about January 6, 2019, Defendant sent Plaintiff an "ANNUAL TAX AND INTEREST STATEMENT," informing her of the principal balance on the Loan for the end of 2018 was "ENDING BAL: $107,600.01," "CURRENT TOTAL PYMT: $1,157.12" and "CURRENT ESCROW PYMT: $585.58."

65.    A redacted copy of the 2018 Tax and Interest Statement Defendant sent to Plaintiff is attached hereto as Exhibit "AI" and incorporated herein by reference.

66.    On or about January 8, 2019, Plaintiff sent Defendant a STATEMENT OF INFORMATION related to Defendant's Deed in Lieu/Mortgage Release Program."

67.    A redacted copy of the information statement dated 01/08/2019 Plaintiff sent to Defendant is attached hereto as Exhibit "AJ" and incorporated herein by reference.

68.    On or about January 11, 2019, Defendant sent Plaintiff a letter stating it had received her application for a Deed in Lieu of Foreclosure and supporting documentation and informs her a determination will be made in 30 calendar days.

69.    A redacted copy of the letter dated 1/11/2019 Defendant sent to Plaintiff is attached hereto as Exhibit "AK" and incorporated herein by reference.

70.    On or about January 18, 2019, Defendant sent Plaintiff a notice informing her "[o]ur records tell us that one or more payment(s) on your Mr. Cooper home loan is overdue." If further informs her about rights she may be entitled to certain rights under the Servicemembers Civil Relief Act (SCRA) and provides the name and contact information of her "Dedicated Loan Specialist" for her to call with questions.

71.     A redacted copy of the letter dated 01/18/2019 Defendant sent to Plaintiff is attached hereto as Exhibit "AL" and incorporated herein by reference.

72.     On or about January 29, 2019, Defendant sent Plaintiff a statement, an "ESCROW REVIEW STATEMENT," informing Plaintiff her "**NEW MORTGAGE PAYMENT STARTING MARCH 1, 2019**," would be "**$728.04**" and her "**TOTAL MONTHLY MORTGAGE PAYMENT AMOUNT**" was also a "**CURRENT PAYMENT**" in the amount of "**$728.04**". It also states, "**NEW TOTAL MONTHLY ESCROW AMOUNT $156.50**." Further, it states "[**m**]**ake your shortage payment online by visiting ww.mrcooper.com or by mailing the coupon on the first page with your payment**."

73.     A redacted copy of the 01/29/19 Escrow Statement is attached hereto as Exhibit "AM" and incorporated herein by reference.

74.     On or about February 7, 2019, Defendant sent Plaintiff a letter informing her, "**Congratulations!** You have been accepted into the Deed-in-lieu of Foreclosure program." It also informs her that such approval is contingent upon a clear title, and she should consider contacting servicers on any other mortgage loans secured by the Property to discuss loss mitigation options.

75.     A redacted copy of the letter dated 2/7/2019 Defendant sent to Plaintiff is attached hereto as Exhibit "AN" and incorporated herein by reference.

**2)     Collection Calls Defendant Made to Plaintiff Post-Discharge**

65.     After Plaintiff received a discharge of the subject debt in her Bankruptcy Case, Defendant placed at least three (3) phone calls to her in furtherance of its attempts to collect on the subject discharged debt.

18

## V. GROUNDS FOR RELIEF - COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

66.    Plaintiff realleges and incorporates herein all of the above paragraphs as if set forth herein in their entirety.

67.    The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. *See* 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

68.    In particular the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or

19

abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

69.    In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. §1692b.

70.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

71.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

72.    The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

73.    The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

74.    To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692 e(1) - (16).

75.    Upon information and belief, all of Defendant's post-discharge actions at issue, described hereinabove in Paragraphs Nos. 27 through 65, are the manifestation of its practices

and policies to deceptively ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect pre-petition debts that have been discharged from unsophisticated debtors.

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE – UNFAIR DEBT COLLECTION

76.    Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

77.    Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)    Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, as the bankruptcy discharge injunction prohibits collection of debts discharged in bankruptcy, Defendant's actions, as well as the actions of its agent's acting on its behalf at issue, were a violation of the Texas Finance Code and Plaintiff's privacy rights; also, such actions constituted a violation of the Texas Finance Code and Nationstar's calls at issue made to Plaintiff's cellular phone constituted violations of the TCPA;

b)    Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's Bankruptcy Case at all relevant times, and there were no post-discharge business transactions between the Plaintiff, for the same reasons stated in the previous paragraph, Defendant's actions at issue were taken to mislead Plaintiff into believing she was legally responsible for the amounts no longer due and owing on the

Account post-discharge. Accordingly, the only conclusion that can be drawn is Defendant were trying to coerce payment of the discharged debt from Plaintiff or gather and obtain information about Plaintiff in furtherance of its attempts to collect the discharged debt. Defendant's actions at issue were deceptive means to collect debt since the subject debt on the Account had been discharged and was legally uncollectible from Plaintiff.

78.    Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue were violations of the TDCA; therefore, making them liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

79.    Due to Defendant's and/or its agents' conduct at issue, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting her claims.

## VII. GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

80.    Plaintiff restates and reiterates herein all paragraphs as above, as if stated herein in their entirety.

81.    Defendant made offensive contacts with Plaintiff through Nationstar's post-discharge notices, statement and phone calls, in furtherance of its efforts to collect the subject discharged debt, this constituted an invasion of Plaintiff's private affairs. These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included in the Discharge Order. Also, Defendant

was forbidden from contacting Plaintiff to collect on the subject discharged debt. Such wrongful acts caused injury to Plaintiff.

82.    Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. GROUNDS FOR RELIEF – COUNT IV

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

83.    Plaintiff repeats, re-alleges, and incorporates herein all previous paragraphs above as if set forth herein in their entirety.

84.    At all times material to this proceeding, Defendant had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.

85.    Defendant acquired the servicing rights on the Account, post-discharge, and began attempting to collect and continued to collect on the subject discharged debt from Plaintiff post-discharge, as evidenced by the post-discharge notices, statements and letters it sent to Plaintiff and the collection calls it made to Plaintiff on the Account.

86.    Defendant failed to cease its debt collection activity on the debt at issue when they became aware Plaintiff filed for bankruptcy protection and the subject debt had been discharged in Plaintiff's Bankruptcy Case.

87.    Defendant's aforesaid actions were willful acts and constitute efforts to collect the discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of the discharge, illustrates its contempt for federal law and the discharge injunction.

88.    The actions of Defendant at issue constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. §524(a)(1)-(3).

89.    The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 bankruptcy filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on her claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

90.    Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

91.    No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the discharge injunction, as stated above.

92.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

93.    Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No allegation of a mitigation as a defense should be allowed.

94.    Plaintiff has been injured and damaged by Defendant' actions at issue and is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX.  *Respondeat Superior* and Vicarious Liability

125.    After a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities')

express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

95.    All of the conduct of Defendant at issue has proximately caused Plaintiff past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.

96.    At all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to attempt to collect and deceptively collect on the subject discharged debt after the discharge of the subject debt in her Bankruptcy Case, at which time there was no debtor-creditor relationship between the parties and Defendant had no legal right to contact Plaintiff or attempt to collect on the subject discharge debt as they did.

97.    After a reasonable time for discovery, Plaintiff believes she will be able to show that despite Defendant receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally attempting to collect on debts discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of engaging in these actions.

98.    After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant at issue were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

99.    After a reasonable time for discovery, Plaintiff believes she will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

100.    After a reasonable time for discovery, Plaintiff believes she will be able to show Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to attempting to knowingly collect on discharged accounts in accordance with its policies and procedures, and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies. Moreover, Plaintiff's injuries resulted from Defendant' malice and/or actual fraud, which entitle Plaintiff to punitive damages.

101.    Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights. The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

102.    Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Cheryl A. Pridgen, prays the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees as provided by the TDCA, FDCPA, invasion of privacy and violation of the bankruptcy discharge injunction;

B       Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,


*/s/ Marilyn S. Altamira*
Marilyn S. Altamira
*Attorney-in-charge*
State Bar No. 00796119
Federal I.D. No. 23237
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 N. Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

March 12, 2019                              /s/ Marilyn S. Altamira
Date                                        Marilyn S. Altamira

30